CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA,
FILED Danville
SEP 10 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| TONYA WADDELL, *on behalf of* J.K.W., a minor child, | CASE NO. 4:12CV00044 |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, | |
| Defendant. | By: B. Waugh Crigler U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's December 18, 2008 application for childhood supplemental security income filed on behalf of J.K.W., a child under age 18, under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 1381 et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision dated April 28, 2011, an Administrative Law Judge ("Law Judge") found that J.K.W. was born on September 14, 1998, and had not reached 18 years of age on December 18, 2008, his application date. (R. 11.) The Law Judge further found that J.K.W. had not

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin hereby is substituted for Michael J. Astrue as the defendant in this action.

engaged in substantial gainful activity since his application date.² (R. 11.) He determined that J.K.W.'s ADHD, learning disability, anxiety, and depression were severe impairments. (R. 11.) However, the Law Judge also concluded that, through the date of the hearing, J.K.W. did not suffer an impairment or combination of impairments which actually met, or medically or functionally equaled, a listed impairment. (R. 14, 15.)³ Therefore, the Law Judge found J.K.W. not disabled under the Act.

Plaintiff appealed the Law Judge's April 28, 2011 decision to the Appeals Council. (R. 1-4.) In its August 17, 2012 decision, the Appeals Council found no basis to review the Law Judge's decision. (R. 1-2.) The Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1.) This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the plaintiff. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the

---

² The Commissioner conducts a three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled. He first determines whether the claimant is engaging in substantial gainful activity, and then whether the claimant suffers a medically determinable impairment that is "severe" or a combination of impairments that is "severe." After that, the Law Judge must decide whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals a listed impairment. 20 C.F.R. § 416.924(a).

³ In reaching his conclusion that J.K.W. did not have an impairment or a combination of impairments that functionally equaled a listing, the Law Judge found that he experienced less than marked limitations in five of the six domains: acquiring and using information, interacting and relating with others, moving about and manipulating objects, caring for himself, and health and physical well-being. The Law Judge concluded that J.K.W. had a marked limitation in attending and completing tasks. (R. 17-23); 20 C.F.R. § 416.926a(b)(1).

Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* at 642.

In a brief filed in support of her motion for summary judgment, plaintiff argues that the Law Judge's finding that J.K.W.'s impairments, considered singularly or in combination, are not functionally equivalent to a listed impairment is not supported by substantial evidence. Plaintiff alleges that due to his ADHD and depression, J.K.W. is a slow learner and has difficulty understanding spoken instruction. (Dkt. No. 14, at 1.) Plaintiff notes that J.K.W. has an IEP due to a learning disability. Plaintiff does not contest the Law Judge's finding that J.K.W. has less than marked limitations in the domains of moving about and manipulating objects, caring for himself, and health and physical well-being. Plaintiff suggests, however, that her son has more serious limitations in the other three domains of acquiring and using information, attending and completing tasks, and interacting and relating with others.[4] *Id.* Therefore, plaintiff seeks reversal of the Commissioner's final decision adopting the Law Judge's decision.

In 2007, J.K.W. was evaluated by Dr. Frank Wickers, a psychologist, because he was was failing the second grade for the second time. (R. 391.) Dr. Wickers opined that plaintiff's behavior was characteristic of someone with Attention Deficit Hyperactivity Disorder (ADHD) of a combined type. (*Id.*) On October 15, 2008, J.K.W. was prescribed Concerta to help with his concentration. (R. 401.) On January 12, 2009, J.K.W. began receiving in-home counseling from

---

[4] In order to be found disabled by functionally meeting a listed impairment, plaintiff would need to show that J.KW. has a marked limitation in two domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(d).

3

Tracy Gray, QMHP, the goal of which was to prevent out-of-home placement. (R. 488.) Ms. Gray treated J.K.W. multiple times a week through August 2009.

In May 2009, J.K.W. related to his counselor that he had hallucinated in school after watching a scary movie with his siblings. (R. 625.) J.K.W. was taken to the school nurse, who wondered if he had taken another substance which was reacting with his Concerta. (R. 175.) The school nurse noted that hallucinations are not a side effect of Concerta. (R. 175.) Plaintiff did not consult a doctor but nevertheless stopped giving J.K.W. his Concerta. (R. 611.)

On August 31, 2009, J.K.W.'s fourth grade teacher, Ms. Maxey, completed a teacher questionnaire. Ms. Maxey opined that J.K.W. had no issues in the domains of interacting and relating with others, moving about and manipulating objects, caring for himself, and health and physical well-being. (R. 213-216.) Ms. Maxey noted that J.K.W. had obvious problems in acquiring and using information, but had a very serious problem only in the activity of recalling and applying previously learned material. (R. 211.) Ms. Maxey opined that J.K.W. had very serious problems in attending and completing tasks, though he had only a slight problem in sustaining attention during play, waiting to take turns, and changing from activity to another. (R. 212.) Ms. Maxey noted that she could understand almost all of his speech on the first attempt and observed that his focus was better when he was taking his ADHD medication. (R. 215-216.)

On October 14, 2009, J.K.W. was examined by Frank Russell, Ph.D., for a consultative psychological examination (CE). Dr. Russell diagnosed plaintiff with ADHD, a learning disorder, and child or adolescent antisocial behavior. (R. 734.) Dr. Russell performed an IQ test using the Wechsler Intelligence Scale for Children-Fourth Edition (WISC-IV). (R. 733.) Dr. Russell observed that "although [J.K.W.'s] Full Scale IQ score fell at 71 just short of the mentally retarded range, there is some evidence of academic abilities consistent with individuals

4

who function at a higher level." (R. 734.) Dr. Russell noted that though there were significant weaknesses in the area of auditory processing and short-term memory, those are often manifested by individuals with ADHD. Dr. Russell opined that J.K.W. did not meet the criteria for mild mental retardation. (*Id.*)

On March 30, 2010, J.K.W. began treatment with Dr. Pooja Sabharwal at the University of Virginia (UVA) Child and Outpatient Psychiatric Clinic. (R. 750.) J.K.W. was diagnosed with anxiety disorder, depressive disorder, and a learning disorder, and Dr. Sabharwal prescribed Zoloft to treat these conditions before dealing with J.K.W.'s ADHD. (R. 752.) At follow-up appointments on April 20 and June 1, J.K.W.'s Zoloft dosage was increased. (R. 788-789.) On August 3, 2010, J.K.W. was prescribed Strattera in addition to his Zoloft. (R. 787.) On September 28, 2010, J.K.W. missed his follow-up appointment because his mother was at school for another of her children. (R. 785.) J.K.W. was late to his next appointment on October 19, 2010, but was still able to be seen, and his medications were not changed. (R. 786.)

On August 9, 2010, J.K.W.'s fifth-grade teachers completed a teacher questionnaire. The questionnaire notes obvious problems in acquiring and using information, and serious problems in attending and completing tasks. (R. 292-293.) There were no problems in moving about and manipulating objects, but the teachers observed slight problems in interacting and relating with others, although all of his speech could be understand, and in caring for himself. (R. 294-296.) The questionnaire reports that J.K.W. was suspended for fighting. (R. 294.) The teachers opined that J.K.W. had ADHD tendencies but did not believe that he had taken any medication for ADHD during that school year. (R. 297.)

The Law Judge determined that J.K.W. had less than marked limitation in the domain of acquiring and using information. Plaintiff argues that J.K.W. is a slow learner. J.K.W. has been

5

diagnosed with a learning disorder, but Dr. Russell opined that J.K.W. does not have even mild mental retardation. (R.734.) Although J.K.W.'s IQ is low, it is still within the normal range. Furthermore, Dr. Russell opined that the auditory processing and short-term memory issues are consistent with ADHD, for which plaintiff had not given J.K.W. his medication. (*Id.*) The Law Judge also considered the teacher questionnaires, which noted a serious problem only once in that domain, and the fact that J.K.W. passed his fifth grade SOL test. (R. 18.) Plaintiff does not point to any contrary evidence, and, therefore, the Law Judge's finding that J.K.W. suffered a less than marked limitation in acquiring and using information is supported by substantial evidence.

The Law Judge found that J.K.W. had a marked, but not an extreme, limitation in attending and completing tasks. (R. 18-19.) The Law Judge relied on the teacher questionnaires, which demonstrated that J.K.W. had very serious problems in this domain. (R. 212-293.) However, the Law Judge observed that J.K.W.'s ability to focus had improved while he was on medication. (R. 19.) Plaintiff admitted that her son had improved with medication, but that she had ceased giving it to him in May of 2009 because of an alleged incident of hallucination. (R. 611.) Plaintiff did not consult a doctor prior to her decision to cease her son's medication and, in fact, J.K.W.'s next treatment record is dated March of 2010, nearly a year after plaintiff stopped J.K.W.'s medication. Given that J.K.W.'s abilities improved with medication, the Law Judge's finding that J.K.W. suffers a marked rather than extreme limitation in attending and completing tasks is supported by substantial evidence.

Finally, plaintiff contends that J.K.W. has difficulty understanding what people say to him. The Law Judge found that J.K.W. had a less than marked limitation in interacting and relating with others. While the Law Judge acknowledged that J.K.W. has behavior problems in

6

the home and that plaintiff says he mumbles, he also relied on the teacher questionnaires. (R. 19-20.) J.K.W.'s fourth grade teacher reported no problems in this domain, and his fifth grade teachers reported only slight problems, seemingly related to his suspension for fighting. Both teacher questionnaires reveal their ability to understand all of J.K.W.'s speech. Plaintiff points to no evidence, other than her own assertions, that contradicts the Law Judge's findings. Therefore, the Law Judge's finding that J.K.W. suffers a less than marked limitation in the domain of interacting and relating with others is supported by substantial evidence.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record and to plaintiff at her last known address.

ENTERED: _____
U.S. Magistrate Judge

9-10-2013
Date

7